OCEAN ACCIDENT & GUARANTEE COR-
PORATION, Inc., v. HERZBERG'S, Inc.*
No. 11178.

Circuit Court of Appeals, Eighth Circuit.

Dec. 2, 1938.

*Writ of certiorari denied 59 S.Ct. 584, 83 L.Ed. —.

WOODROUGH, Circuit Judge, dissenting.

G. L. DeLacy, of Omaha, Neb. (Yale C. Holland, J. A. C. Kennedy, E. J. Svoboda, R. E. Svoboda, and Edwin Cassem, all of Omaha, Neb., on the brief), for appellant.

Sam Beber, of Omaha, Neb. (Robert J. Webb, Philip M. Klutznick, and Harold M. Kelley, all of Omaha, Neb., on the brief), for appellee.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from a judgment against appellant on a public liability insurance policy. Appellee sued to recover the amount expended by it in the defense and payment of a judgment rendered against it in favor of one Grace Robertson for personal injuries alleged to have been sustained by her in the course of certain treatments in a beauty-shop department of appellee's store in Omaha, Nebraska, known as the Marinello Shop, Inc.

Herzberg's, Inc., is a large retail women's clothing and department store. It

includes a few departments leased to and operated by persons other than the appellee corporation. Among such departments was "Irene Gray, dba The Marinello Shop, Inc." Irene Gray under the above style was named as an assured in the policy, which was the ordinary public liability policy, indemnifying appellee's store and its named departments against claims of customers and others arising out of accidental bodily injuries occurring within or upon the premises. To this policy, however, there was attached the following endorsement or rider: "The under mentioned policy is issued by the Company and accepted by the Assured with the understanding that the Company shall not be liable for bodily injuries, illness, or death resulting therefrom, suffered by any person or persons in consequence of an error or alleged error or mistake in administering, applying or dispensing drugs, chemicals, mixtures or the like; or in the making or compounding of prescriptions; or in consequence of professional services or treatments or the omission thereof, or malpractice on the part of any physician, surgeon, nurse, druggist, assistant, attendant or any person connected with the Assured in the operation of the business covered by this policy".

The Marinello Shop was operated by Irene Gray under the style hereinabove stated. One Goldie York was an attendant in the shop. In April, 1925, Grace Robertson, a minor, of about eleven years of age, went to this beauty shop to have a growth of hair removed from her face. This was the nature of work done generally by this and other beauty shops in Omaha during the years 1925 and 1926. Such work is described as including "facials, manicuring, and removing superfluous hair, and hair waving generally." These beauty parlors had mechanical devices and electric machines. Some of the treatments were administered by hand, and some "by electrical instruments and apparatuses". Goldie York, as an attendant in the Marinello Shop, and connected with the assured in the operation of its business, gave Grace Robertson treatments for removing superfluous hair from the face by means of an electrical apparatus called a "Tricho" machine. She testifies that "after giving these treatments her face seemed, to be burned—the appearance of a burn-discoloration". This was the bodily injury for which Miss Robertson recovered damages.

Goldie York testified that she was a "cosmetician" and had practiced cosmetology since her graduation from a school in Los Angeles, where the art of cosmetology was taught. Irene Gray, the operator of the shop, and her employer, was also a graduate of a cosmetology school. Miss York testified that she had no special training in the operation of the Tricho machine. "We would plug the machine in and it would work automatically".

A jury was waived, and the court, sitting as a jury, found the issues for appellee and entered judgment against appellant in the sum of $14,843.46 and costs. The action of the trial court was based upon its construction of the so-called malpractice endorsement, to the effect that its application was confined to "bodily injuries suffered in consequence of professional treatments administered by any physician, surgeon, nurse, druggist, or by any assistant, attendant or helper to any such physician, surgeon, nurse or druggist."

We think this construction of the endorsement is too narrow in view of its plain language, and the circumstances conditioning its application. It is provided, among other things, that the insurance company shall not be liable for bodily injuries suffered by any person in consequence of professional services or treatments or malpractice, on the part of any attendant, person or persons connected with the assured in the operation of the business covered by the policy. This language aptly covers the situation here presented. The treatment of Miss Robertson's face for the removal of hair therefrom was a professional treatment administered in a department of the appellee by persons connected with the assured in the operation of its business. That department was held out to the public as qualified to administer treatments of the nature employed in beauty shops generally. The operator of this shop and her assistant York were educated in schools devoted to instruction in the Art of Cosmetology. It is noteworthy that the State of Nebraska has deemed it necessary and proper by statute to regulate the practice of cosmetology, including provisions for education and supervision, requirements for certificates to practice, and causes for revocation of such certificates, among others, malpractice and unprofessional conduct. (C. S. Nebraska 1929, sec. 71-2101; 71-2109) The term profession has in the past been so generally associated with the-

ology, medicine, and law, that the construction adopted by the trial court may be readily understood. However the term has long ceased to be connected and restricted exclusively to those so-called learned professions. The New Century Dictionary, 1927, uses this language: "Formerly theology, law and medicine were specially known as the professions; but as the application of science and learning are extended to other departments of affairs, other vocations also receive the name".

In the Oxford English Dictionary, 1926-32, a profession is defined as "the occupation which one professes to be skilled in and to follow". It involves a "vocation in which a professed knowledge of some department of learning or science is used in his application to the affairs of others, or in the practice of an art founded upon it". This is now substantially the definition generally accepted by the recognized authorities, and specifically in Nebraska. See the statute cited above, and Village of Dodge v. Guidinger, 87 Neb. 349, 127 N.W. 122, 138 Am.St.Rep. 494. Compare 50 C.J. 637.

■ The fact that physicians, surgeons, nurses, and druggists are mentioned in the endorsement can have no effect of limiting its application to such professions and vocations. Of course any malpractice on the part of such would fall within the exclusion if they were summoned to administer to a person injured upon appellee's premises; but there is no evidence that appellee maintains a staff of physicians and surgeons, or is a purveyor of drugs, and obviously such persons do not come within that part of the endorsement excluding from liability under the policy bodily injuries suffered in consequence of professional services or treatments on the part of an attendant or any person connected with the assured in the operation of the business covered by the policy. This construction is essential if we are to give force and effect to the plain language and scope of the endorsement. The obvious error involved in the professional application of the Tricho apparatus, whether due to negligence or ignorance, amounted to malpractice under the terms of this endorsement. In consequence thereof appellant is expressly not liable under its policy.

The judgment below is reversed and the cause remanded to the district court for further proceedings not inconsistent herewith. It is so ordered.

WOODROUGH, Circuit Judge (dissenting).

The duty of the court in this case is to put a fair and sensible construction on an exception or limitation clause in a public liability insurance policy. The policy was issued to a dozen corporations, co-partnerships and individuals interested in departmented businesses carried on at 1519 Douglas Street, Omaha, under the sign "Herzberg's, Inc.", including a ready to wear department, a department handling coats, suits and dresses, a shoe department, a beauty shop department and a millinery department. The insurance company agreed "respecting accidental bodily injuries" occurring on the "entire premises" "to insure the assured against loss by reason of the liability imposed by law upon the assured for damages (either direct or consequential) on account of such injuries." A customer in the beauty shop had her face burned by an electrical heating apparatus in the hands of an employee in the beauty shop and so suffered accidental injuries within the foregoing insuring clauses of the policy. She recovered a judgment for large damages against Herzberg's, Inc.

The insurance company is liable unless it was exempted by the Malpractice Endorsement incorporated in the policy. The holding in this court is that it was so exempted because the injuries to the customer were suffered from "malpractice" incident to "professional treatment" by the employee in the beauty shop. I think the policy covered the work being done in the beauty shop when the customer was hurt, and that the exception on which the company seeks to escape is at best too uncertain to justify exempting it under Nebraska law.

The "Malpractice Endorsement" is referred to on the front page of the policy and is attached with its large type heading "Malpractice Endorsement", and the relevant clauses read: " * * * the company shall not be liable for bodily injuries * * * suffered by any person or persons in consequence of an error or alleged error or mistake in administering, applying or dispensing drugs, chemicals, mixtures or the like; or in the making or compounding of prescriptions; or in consequence of professional services or treatments or the omission thereof, or malpractice on the part of any physician, surgeon, nurse, druggist, assistant, attendant or any per-

son connected with the .Assured in the operation of the business covered by this policy."

It is unquestioned that the assured is bound by the terms of the Malpractice Endorsement properly construed. The policy was bought by Mr. Mose Herzberg for the assureds, and he was experienced in buying insurance: He read over the Malpractice Endorsement and discussed it with the company's agent when he bought the policy. He testified that what he wanted to. get "was insurance against any accident of any kind that might occur in the store", and that was in substance what the foregoing insuring clauses of the policy provided. It was not shown what arrangements Herzberg's, Inc., had about doctors' services. It is hardly credibile that they had none in this day and age, in view of the multitude of people they had working on and were inducing to come to the premises. Mr. Herzberg could not fail to see that by the "Malpractice Endorsement" the insurance company had plainly withdrawn malpractice in therapeutics from the policy's coverage. He understood that. When doctors were called to the store, they and the hospitals would be independent contractors, probably insured themselves. He was not operating or insuring a hospital department. But his testimony is that from what he could get from reading the "Malpractice Endorsement" it did not "vary the terms of the policy" from the insurance he wanted against accidents occurring in the store. In every department there were workers likely to suffer injury themselves and to inflict it on others. He thought he was buying insurance against liability imposed by law on account of such injuries. His thinking so does not relieve this court from the duty to construe the printed words of the policy, but it does indicate how an intelligent man, used to the business, took the meaning. It all depends on how we shall construe "malpractice" and "professional services and treatments" in the Malpractice Endorsement.

Of course there is a sense in which most all of the Herzberg workers were engaged in professional services. I suppose the ready to wear department handled ladies wear, and I make no assumptions about what the workers there had to do. Those in the "coats, suits and dresses department" undoubtedly opened and shut wardrobes, put garments on people, old and young, strong and frail. They built up and tore down piles of garments, moved people about into different lights and postures before large mirrors that had to be adjusted, used pins and needles and scissors and advised and assisted about making human figures conform, and so created liability hazards to themselves and customers. In the shoe department there are shoes stacked very high up in boxes, sometimes ladders moved about, foot measuring instruments, stools, and tender feet about which advice is given and services are rendered in selling shoes. In the millinery department, the uses of scissors and pins and needles and mirrors and displaying apparatus are multiplied. In the beauty shop there are more risky gadgets, including electric apparatus to apply heat to human heads. See Larx v. Gibbs & Co., 8 Cir., 97 F.2d 924.

Undoubtedly there is a sense in which every trained and skilled worker on the crowded premises was engaged in practicing a profession. The dictionary citations in the court's opinion so demonstrate. The skilled man or woman who fitted shoes comfortably upon tender feet; those who could make the buyers of the garments look as they wanted to look, and those who succeeded in the beauty shop, were not amateurs. If "professional services and treatments" was used in the malpractice exception of the policy to cover any "occupation which one professes to be skilled in and to follow", or any "vocation in which a professed knowledge of some department of learning or science is used in its application to the affairs of others, or in the practice of an art founded upon it",—then obviously the malpractice endorsement took away all of Herzberg's insurance "respecting accidental bodily injuries occurring on the entire premises" which were traceable to the negligence of any of the skilled employees. They were all rendering professional services or treatments within the extraordinary definitions discoverable in dictionaries. In that same sense it happens even in the blacksmith shop that a horse's hoof is sometimes found to be split, and the experienced smithy treats it by skillful cutting and paring and shaping and adapting one shoe after another until nature, assisted by his informed and artful treatment, restores the hoof to health again. But no one would think of calling a mistake of the blacksmith malpractice. Webster's pocket dictionary, in general circulation, says the word "malpractice" is specially used in reference to negligent practice by a physician. In the

Malpractice Endorsement the company's exemption is malpractice on the part of any "physician" and others. The reader sees that malpractice is being expanded beyond "physicians" to others, but the list of those others goes on with "surgeons, nurses, druggists, assistants, attendants", (id omne genus) and he naturally thinks only of an extension of the same idea of somebody hurt or sick and being treated. That is, he thinks of a liability hazard of the same kind as the malpractice of physicians suggests. Ejusdem generis. Nor does the inclusion at the end of the list of the general words "any person" tend to take the thought away from the same concept of somebody being treated for hurts or sickness. In the context, "professional services or treatments" continues to confine the attention in the same channel. The whole malpractice endorsement rivets the reader's mind to that same thing (therapeutics). It speaks of "administering, applying or dispensing drugs, chemicals, mixtures or the like; making or compounding of prescriptions and malpractice of physicians, surgeons, nurses, druggists, etc." All of which relates to treatment of sickness and hurts. The endorsement nowhere comes out plainly about doing or not doing anything suited only to serve people who are hale and hearty. Such a thought is scrupulously avoided. The reader may well think that what the skilled employees in the store had to do with the figures, feet and faces of their customers was entirely foreign to the Malpractice Endorsement.

I mean that the reader may think so—not that it is so plain that he must think so. The salesmen of these insurance policies have skill in salesmanship. They know what their customers want. The companies write the policies and if that thought and meaning is there in the policy, they can be trusted not to minimize it. Mr. Herzberg's testimony as to what he thought after discussion with the agent seems to me to be the truth of it.

Such being the case, the law of Nebraska compels us to construe the uncertainties favorably to the insured. Coad v. London Assurance Corporation, 119 Neb. 188, 227 N.W. 925; Updike Investment Co. v. Employers Liability Assurance Corp., 131 Neb. 745, 270 N.W. 107. The opinion of the learned trial court and the able brief for Herzberg have convinced me that the Malpractice Endorsement ought not to be stretched beyond therapeutics ("pertaining to the healing art.") Such construc-

tion gives every word in the heading and body of the endorsement in its context reasonable significance and commonly applied meaning. It merely upholds the insurance which the selling agent and the purchaser of the policy not unreasonably thought was included and bargained for, and gives the same kind of coverage for each of the businesses insured. It is obvious that if it had been understood that the public liability coverage did not extend to negligence of all the employees, the agent would have quoted an additional premium for such coverage. I think that to extend the exemption to take away Herzberg's public liability protection against the negligence of all or any of his skilled employees who may have had some schooling in their lines, offends against the fundamental rules of construction applicable to insurance policies under Nebraska law and justifies dissent.