[No. B031373. Second Dist., Div. Three. Mar. 9, 1989.]

JULIA HOLLINGSWORTH, Plaintiff and Appellant, v.
COMMERCIAL UNION INSURANCE COMPANY et al.,
Defendants and Respondents.

COUNSEL

Douglas Byron Haynes for Plaintiff and Appellant.

Smylie & Selman, Neil H. Selman and Jeffrey C. Segal for Defendants and Respondents.

OPINION

ARABIAN, J.—

## INTRODUCTION

"[T]he logic of words should yield to the logic of realities." (*Di Santo* v. *Pennsylvania* (1927) 273 U.S. 34, 43 [71 L.Ed. 524, 529, 47 S.Ct. 267] (Brandeis, J., dis.), overruled on other grounds in *California* v. *Thompson* (1941) 313 U.S. 109, 116 [85 L.Ed. 1219, 1223, 61 S.Ct. 930].) In this case, we must determine whether ear piercing constituted a "professional service," which defendant Commercial Union Insurance Company (Commercial) specifically excluded from coverage in an insurance policy held by plaintiff Julia Hollingsworth (Hollingsworth). On summary judgment, the trial court found the term unambiguous and ruled that Commercial had no duty to defend or to indemnify Hollingsworth. We affirm.

### FACTUAL AND PROCEDURAL STATEMENT

At all relevant times, Hollingsworth was the sole proprietor of Merle Norman Cosmetics-Eastland, a cosmetics store, operating under a merchants insurance policy originally issued by Commercial sometime prior to March 1984. In pertinent part, the policy provided coverage for bodily injury "caused by an occurrence insured by this policy . . . ." However, it also specified several types of losses excluded from its coverage: "LOSSES NOT COVERED UNDER BUSINESS LIABILITY COVERAGE [¶] 8. PROFESSIONAL SERVICES [¶] [COMMERCIAL UNION] does not insure you for bodily injury or property damage due to the providing of, or failure to provide, any professional service. However, this exclusion does not apply to pharmacological services if you are doing business as a retail drugstore." The policy did not otherwise define the term "professional services."

On June 7, 1984, Jamie Marie Davis, a minor, had her ears pierced at the store by one of Hollingsworth's employees, which resulted in serious injury and disfigurement. Hollingsworth promptly notified Commercial of the

incident. On November 16, 1984, Davis's guardian ad litem filed suit for personal injuries and eventually named Hollingsworth and Merle Norman Cosmetics-Eastland as party defendants.

On March 6, 1986, Hollingsworth formally requested that Commercial defend her in the Davis action. Commercial denied coverage, informing her that the injury came within the policy's "professional services" exclusion. As a result, Hollingsworth brought suit against Commercial for tortious breach of contract, including breach of duty of good faith and fair dealing, breach of fiduciary duty, and breach of statutory duty.

Commercial moved for summary judgment based upon the terms of the insurance policy and the manner in which the injury to Davis occurred. In opposition, Hollingsworth submitted her own declaration describing her business and the ear-piercing operation she offered her customers. In pertinent part, she stated: "5. As of June, 1984, I employed two girls to sell our products and do ear-piercing. They were paid $3.65 per hour as a base wage, and a small percentage of their sales, which if added to their base wage amounted to about $4.00 to $4.50 per hour. When I hired them, I did not require that they have a high school education or that they have any special knowledge of my business or of ear-piercing.

"6. In March, 1984, the representative of the manufacturer of the ear-piercing tool visited my Studio and spent no more than twenty (20) minutes demonstrating to me and my employees how to use the tool. Neither I nor my girls took any classes or special training in ear-piercing and, to my knowledge, the manufacturer's representative had no special training, nor was he licensed. The tool was simple to operate, was non-electric, and required no particular skill.

"        .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"8. We pierced ears for free if the customer purchased one set of earrings from us. We did not give any discount on the earrings if the customer did not need an ear-piercing. . . ."

The trial court found that the exclusion for injuries resulting from the rendering of "professional services" related to "negligence that occurs within the particular occupation practice as contrasted with premises negligence or something like that which is clearly covered for other things." The court accordingly ruled that "professional services covers the ordinary activities of the work activities of the Hollingsworth's" and granted summary judgment in favor of Commercial.

## ISSUE PRESENTED

The sole issue is whether the trial court properly determined that the policy exclusion for "professional services" included ear piercing as performed by the insured's employee.

## DISCUSSION

On summary judgment, the trial court must determine whether the evidence reveals any unresolved issue of material fact between the parties. (Code Civ. Proc., § 437c.) ■ However, in a case turning on the interpretation and application of a policy term, the issue on summary judgment becomes a mixed question of fact and law, particularly in light of the extensive and well established principles that inform our efforts on review: ■ "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.]

■ "On the other hand, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy. [Citations.] Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage. ■ 'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.]' [Citations.] '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. . . . "[A]ny exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect" [citation]; thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.]' [Citation.]" (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].)

Hollingsworth's policy provided basic property and liability coverage to her as the proprietor of a cosmetics sales business. Commercial based its denial of coverage on the specific exclusion of losses resulting from the rendering of "professional services": "[Commercial] does not insure you for bodily injury or property damage due to the providing of, or failure to

provide, any professional service." The policy does not elsewhere define "professional service"; nor has any court judicially construed a similar policy term with reference to ear piercing.

■■■ In the absence of an express policy explanation or authoritative interpretation, Hollingsworth argues she was entitled to assume that the ear piercing performed by her employees was an insured risk, relying substantially on *Marx v. Hartford Accident and Indemnity Company* (1968) 183 Neb. 12 [157 N.W.2d 870]. There, the court stated, "A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. [Citations.]" (157 N.W.2d at p. 872.) Hollingsworth also cites to standard dictionaries, which generally define "profession" as "a calling requiring specialized knowledge and often long and intensive academic preparation." (Webster's Ninth New Collegiate Dict., p. 939.) Since ear piercing is not regulated by the state, does not require licensing, and consists simply of mechanically operating the ear-piercing tool, she contends that it does not qualify as a "professional" service under the foregoing definitions. Alternatively, she contends that the term is at least ambiguous and must be construed in favor of coverage.

Commercial counters by drawing a distinction between engaging in a "profession" and rendering "professional" services, the latter applying in a wider variety of situations and depending to a greater extent upon the circumstances to which it applies. ■■■ After extensive review, we conclude that an insured's claim of coverage for "professional services" must be evaluated in light of all the relevant circumstances in which that claim arises, including, but not limited to, the term's commonly understood meaning, the type and cost of the policy, and the nature of the enterprise.

Several factors lead us to this conclusion. ■■■ First, since we give primary consideration to the insured's reasonable expectation of coverage, the common understanding of the language in question becomes our initial point of reference. (See, e.g., *Reserve Insurance Co. v. Pisciotta, supra,* 30 Cal.3d at p. 810.) The dictionary definition of "professional" encompasses a broad range of activities beyond those traditionally considered "professions," such as medicine, law, or engineering. (See also *Exner v. American Medical Assn.* (1974) 12 Wn.App. 215 [529 P.2d 863, 866, 75 A.L.R.3d 603].) That definition includes "2 a: participating for gain or livelihood in an activity or field of endeavor often engaged in by amateurs < a ~ golfer > b: having a particular profession as a permanent career < a ~ soldier > c: engaged in by persons receiving financial return < ~ football > 3: following a line of conduct as though it were a profession

< a ~ patriot > ." (Webster's Ninth New Collegiate Dict., p. 939.) Judicial authorities have also expressly recognized that "the term has long ceased to be connected and restricted exclusively to those so-called learned professions." (*Ocean Accident & Guarantee Corp.* v. *Herzberg's, Inc.* (8th Cir. 1938) 100 F.2d 171, 173, cert. den. *sub nom. Herzberg's, Inc.* v. *Ocean Accident & Guarantee Corp.* (1939) 306 U.S. 645 [83 L.Ed. 1044, 59 S.Ct. 584]; see *In re Hair Net Packers* (C.C.P.A. 1940) 115 F.2d 254, 255.) Thus, as commonly understood, the term "professional services" is not as narrowly circumscribed as Hollingsworth proposes. Rather, it generally signifies an activity done for remuneration as distinguished from a mere pastime. (See, e.g., *ibid.* (professional hair dressers); *Barnes* v. *Litton Indus. Products* (D.C.Va. 1976) 409 F.Supp. 1353, 1359, revd. in part at 555 F.2d 1184 (professional products); *Jim Halsey Co., Inc.* v. *Bonar* (1985) 284 Ark. 461 [683 S.W.2d 898, 905] (professional fund raiser); *People* v. *Kaprelian* (1972) 6 Ill.App.3d 1066 [286 N.E.2d 613, 618], cert. den. *sub nom. Kaprelian* v. *Illinois* (1973) 412 U.S. 918 [37 L.Ed.2d 144, 93 S.Ct. 2730] (professional informer); *General Grain, Inc.* v. *International Harvester Co.* (1968) 142 Ind.App. 12 [232 N.E.2d 616, 618] (professional bailee); *In re Williams* (1935) 174 Okla. 386 [50 P.2d 729, 731-732] (professional ethics); *Gray* v. *State* (Tenn. 1976) 538 S.W.2d 391, 393 (professional criminal).)

Second, case authorities also instruct that "[l]anguage in [an insurance] contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920].) "Since the meaning of the word is not fixed, it is necessary in each particular situation to look to the context in which the term is used to ascertain what is meant. . . . 'Philology is, at best, an unsafe criterion for ascertaining the meaning of words which are in common use, and the definition thus obtained is always subordinate to the meaning derived from the context, or from the circumstances under which the word is used.' " (*Myers* v. *Alta Construction Co.* (1951) 37 Cal.2d 739, 742 [235 P.2d 1]; see also *In re Frederick Petroleum Corp.* (S.D.Ohio 1987) 75 B.R. 774, 779-780.) "In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself. [Citation.]" (*Marx* v. *Hartford Accident and Indemnity Company, supra,* 157 N.W.2d at p. 872; *Mason* v. *Liberty Mutual Insurance Co.* (5th Cir. 1967) 370 F.2d 925, 926; *Swassing* v. *Baum* (1976) 195 Neb. 651 [240 N.W.2d 24, 27].) Thus, for example, in *Knorr* v. *Commercial Cas. Ins. Co.* (1952) 171 Pa.Super. 488 [90 A.2d 387, 388], "[s]ince th[e] policy was issued specifically to cover a beauty parlor, it is clear that the term 'professional services' refer[red] to the technical work performed by beauticians, hair-dressers, etc."

Finally, a case-by-case approach permits us to reconcile the interests and anticipations of the parties with due regard for the principles governing the interpretation of an insurance contract. ■ While the primary concern is to protect an insured's reasonable expectation of coverage (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 808), nevertheless, an insurer "has a right to limit the coverage of its policy and when it has done so the plain language of the limitation must be respected. [Citations.] Courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated. [Citations.]" (*Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1296 [238 Cal.Rptr. 36].) ■ "Ambiguity in an insurance policy, if it exists, must be found in the circumstances of the particular case; it may not be created in the abstract." (*Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 835 [192 Cal.Rptr. 207].)

■ With these considerations in mind, we now examine the facts before us. The injury resulting from the faulty ear piercing occurred while Hollingsworth was operating a retail cosmetics store. Her policy with Commercial was designated a "Merchants Package Policy" and protected against certain types of property and liability losses for an annual premium of $132. In general, the policy provided property coverage to the extent Hollingsworth sustained damage to her business property or equipment or suffered a resulting interruption in business. As to liability coverage, the policy contained numerous specific exclusions, including the rendering of professional services, but otherwise generally included any "accident arising out of [the] business operations." Thus, by its nature the policy itself suggested the type of activities falling within the professional services exclusion.

In essence, Hollingsworth secured from Commercial the business enterprise analog of a homeowner's policy, i.e., coverage protecting her interests in the property itself including continued operations as well as coverage for injuries to individuals while on the property. The injury to one of Hollingsworth's customers did not arise from any deficiency in the premises, such as a slippery floor or unsafe fixture, but from a separate and distinct service offered to benefit financially her interest in the enterprise and involving bodily intrusion however minor. The relatively low premium also underscores the limited nature of the coverage and dispels any reasonable expectation that it would extend to the type of injury suffered here.

Furthermore, in the context of a cosmetics business, ear piercing clearly constitutes a professional service as distinguished from an activity incidentally related to its everyday operations. Such an enterprise is devoted to grooming and the improvement of personal appearance for which jewelry

can be a significant enhancement. And, although Hollingsworth did not charge a monetary fee for piercing a customer's ears, neither was it performed gratis. The procedure was offered only with the purchase of a pair of earrings. Undoubtedly, attracting prospective purchasers into the store also provided additional economic incentive to Hollingsworth. Thus, the ear-piercing was a "professional" service both in the sense that it constituted an aspect of the cosmetics sales profession and that it was done for and in anticipation of some form of financial gain.

The fact that the activity could be performed without a license and did not require extensive training or technical skill does not alter our conclusion. Hollingsworth and her employees were given instruction in the use of the ear-piercing instrument by a manufacturer's representative and obviously were aware that it was to be used in a prescribed manner to achieve the desired results. While these particulars may not have been spelled out in excruciating detail in a general policy designed for a wide variety of business operations, the context in which the activity arises in light of the perceived purpose of the policy dispels the ambiguity Hollingsworth attempts to inject. (See, e.g., *Knorr* v. *Commercial Cas. Ins. Co., supra,* 171 Pa.Super. 488 [90 A.2d at p. 388].)

While we have not discovered a case substantially on point with the instant facts, several decisions conceptually buttress our determination. In *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089], the insured, in addition to caring for her own children, provided daily child care services in her home for two young children one of whom was injured while in her charge. She sought reimbursement under the provisions of her homeowner's policy; but the insurer denied coverage due to an exclusion that exempted "any business pursuits of an Insured, other than activities therein which are ordinarily incident to non-business pursuits. . . .' " (*Id.,* at p. 115.) The Supreme Court reversed the declaratory relief judgment in favor of the insurer in part upon the following rationale: "Assuming that the care of the child constituted a business pursuit, such duties under the circumstances presented here were clearly incident to [the insured's] nonbusiness regimen of maintaining a household and supervising her own children. Indeed, it is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children." (*Id.,* at p. 117.)

Here, Hollingsworth's policy covered losses for any accident "arising out of [her] business operations." However, the ear-piercing service, although a concomitant of the business enterprise, was a clear departure from the type of activities ordinarily considered necessary to maintain her daily business

operation, particularly since Hollingsworth had operated successfully for some time without offering this additional inducement to her customers. Given the analysis in *Crane,* we thus find further support for our determination that the service fell directly within the policy exclusion. Moreover, Hollingsworth never informed Commercial when she commenced the ear-piercing service. Thus, she should have understood that the premium charged reflected a reasonable perception that her normal business activities did not include any potentially injurious procedure. (See *Harris* v. *Fireman's Fund Indem. Co.* (1953) 42 Wn.2d 655 [257 P.2d 221, 227].)

In *Northern Insurance Co.* v. *Superior Court* (1979) 91 Cal.App.3d 541 [154 Cal.Rptr. 198], the insured doctor was sued for mistakenly performing an abortion after a clerical employee confused two patients' medical charts. The insurer sought declaratory relief based upon a policy exclusion that exempted it from defending or indemnifying the insured for bodily injury due to the rendering of or failure to render any professional service. (*Id.,* at p. 543.) The doctor sought to avoid the exclusion by arguing "that coverage exists under the premises liability portion of the policy because the injury resulted from an 'administrative' error rather than from professional negligence." (*Id.,* at p. 544.) The court rejected this attempt to fragment the nature of a professional service and then recharacterize its components to invoke coverage. "The fact that the physician utilizes the assistance of a nonphysician in the performance of that duty cannot alter the professional nature of that nondelegable duty." (*Ibid.*)

By a parity of reasoning, Hollingsworth cannot recast the nature of her ear-piercing service by identifying particular elements of the activity, such as the absence of a licensing requirement or relative lack of training necessary, which do not strictly conform to a particular definition of "professional." It must be viewed as a whole and evaluated within the context in which it was performed. (See also *Ocean Accident & Guarantee Corp.* v. *Herzberg's, Inc., supra,* 100 F.2d at p. 173.) When so viewed and evaluated, we find no ambiguity in the policy exclusion nor any basis for finding a reasonable expectation on Hollingsworth's part that her liability policy covered injury resulting from this type of activity. Since no other factual issue remained, the trial court properly granted summary judgment in favor of Commercial as to its duty both to defend and to indemnify Hollingsworth for her loss.

## Disposition

The judgment is affirmed. Appellant to bear costs on appeal.

Klein, P. J., and Danielson, J., concurred.