[No. B162493. Second Dist., Div. Six. Oct. 28, 2003.]

AMEX ASSURANCE COMPANY, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

**C**OUNSEL

Bruce N. Graham for Plaintiff and Appellant.

MacGregor & Berthel, Gregory Michael MacGregor, Deborah A. Berthel and Joshua N. Willis for Defendant and Respondent.

**O**PINION

**GILBERT, P. J.**— A plumber installs a propane water heater at his friend's house. He allegedly causes a fire that destroys the house. The plumber's

homeowner's policy excludes damages arising from professional services and business activities. We affirm summary judgment in favor of the plumber's homeowner's insurance carrier because the plumber could have no reasonable expectation of coverage under these circumstances.

## FACTS

Micheline Zumbrun owns a home in Thousand Oaks. She lives there with her daughter, the Toulet family, and three renters. On the evening of April 5, 1995, the house burned to the ground. Shortly before the fire, Jan Cox, a plumber and friend of the Toulets, had installed a propane water heater at the house.

Zumbrun made a claim against her homeowner's insurance carrier, appellant Amex Assurance Company (Amex). Amex denied coverage and brought an action against Zumbrun for declaratory relief. Zumbrun in turn brought an action against Amex for breach of contract and bad faith. These actions were consolidated. Amex cross-complained against Cox, alleging that the fire was the result of his negligence.

Eventually, Amex paid more than $1.5 million to settle Zumbrun's claim. The settlement agreement granted Amex an assignment of Zumbrun's claims against third parties. Amex pursued its cross-complaint against Cox.

Cox represented himself in propria persona. He missed two court-ordered settlement conferences and Amex moved to strike his answer as a sanction. The trial court granted the motion and entered a default against Cox, resulting in a judgment for $1.3 million.

Amex then obtained an assignment of Cox's rights and made a claim against his homeowner's insurance carrier, Allstate Insurance Company (Allstate). Allstate denied the claim and Amex brought this action alleging breach of contract and bad faith.

Allstate moved for summary judgment on the ground that Cox's policy excluded coverage for professional services, business activities and damages arising out of any premises but the insured premises. In support of its motion, Allstate included certain admissions. Cox admitted that between 1963 and 1968 he served a union apprenticeship to become a plumber. He is a journeyman member of the plumbers' and pipe fitters' union. He worked as a plumber for H. W. Allen Plumbing Company from 1977 to 1989. He is a certified welder and worked as a welder from 1991 to 1993 for JAMPCO.

In his deposition, Cox stated that he had been at the Zumbrun residence working on the gas lines to install a propane water heater. His work involved

repairing a joint on a copper pipe, connecting a branch outlet to a steel line by removing an elbow and replacing it with a "T," putting the line back together with a right and left hand coupling and nipple, adding a valve, installing pipe and conducting a "bubble test" by applying soap to the pipes once the gas is turned back on.

Prior to April 5, 1995, Cox had done similar work for Zumbrun. Sometimes he received payment for the work and sometimes he did not. At the time he installed the water heater, Cox had no agreement for payment. But he stated he was "hoping to stir [Zumbrun] enough to pay [him] the money she owed [him] for [prior] construction [work]."

Amex objected that it should not be bound by Cox's admissions. The trial court overruled the objection and granted summary judgment.

### DISCUSSION

### I

█ Summary judgment is proper only if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) █ The court must draw all reasonable inferences from the evidence set forth in the papers except where such inferences are contradicted by other inferences, or evidence that raises a triable issue of fact. (*Ibid.*) In examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

█ Interpretation of an insurance contract is a question of law. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) The mutual intention of the parties governs. (*Ibid.*) If possible, such intent should be determined solely from the written contract. (*Ibid.*) The words of the contract are given their ordinary and popular meaning unless used by the parties in a technical sense. (*Ibid.*)

█ An insurer has a duty to defend when the underlying suit potentially seeks damages within the coverage of the policy. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 869 [77 Cal.Rptr.2d 107, 959 P.2d 265].) Whether the underlying suit potentially seeks damages within the coverage of the policy is determined by the pleadings and facts of which the insurer becomes aware. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11

Cal.4th at p. 19.) Where the extrinsic facts eliminate the potential for coverage, however, the insurer may decline to defend even when the allegations of the complaint suggest potential liability. (*Ibid.*)

Where the policy is ambiguous, an insurer has a duty to defend where the insured would reasonably expect a defense based on the nature and kind of risk covered by the policy. (*Foster-Gardner v. National Union Fire Ins. Co., supra,* 18 Cal.4th at p. 869.) A policy provision is ambiguous only when it is capable of two or more constructions, both of which are reasonable. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 18.) A policy provision cannot be found to be ambiguous in the abstract, but must be interpreted in the context of the whole contract and in light of the circumstances of the case. (*Ibid.*)

## II

Amex contends the policy's professional services and business activities exclusions do not apply.

Allstate's policy provides: "We do not cover bodily injury or property damage arising out of the rendering of or failure to render professional services by an insured person." Allstate's policy also provides: "We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person." The policy defines "business" as "any full or part-time activity of any kind engaged in for economic gain[.]"

It is undisputed that Cox is a journeyman plumber and certified welder. The fire at Zumbrun's residence was allegedly caused by his work on gas lines in installing a propane water heater. Amex argues that plumbing is a craft or trade and does not qualify as a professional service.

A similar argument was rejected in *Hollingsworth v. Commercial Union Ins. Co.* (1989) 208 Cal.App.3d 800 [256 Cal.Rptr. 357]. There, a customer sued a cosmetics store for damages allegedly caused when the store's employees negligently pierced the customer's ears, causing serious injury and disfigurement. The store's owner tendered defense to her business insurer. The insurer denied coverage under the policy's professional services exclusion. The store owner argued that ear piercing was not a professional service because it required no special training or skill. The owner and her employees had only a 20-minute demonstration of the piercing tool by the manufacturer's representative.

In affirming the trial court's grant of summary judgment in favor of the insurer, the Court of Appeal observed that courts recognize the term "professional" has long ceased to apply only to "so-called learned professions."

(*Hollingsworth v. Commercial Union Ins. Co., supra,* 208 Cal.App.3d at p. 807.) The court stated, "[A]s commonly understood, the term 'professional services' . . . generally signifies an activity done for remuneration as distinguished from a mere pastime. [Citations.]" (*Ibid.*)

■ Here, as in *Hollingsworth,* the term "professional services" was not defined in the policy. Thus the ordinary understanding of the term applies. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 18.) We agree with *Hollingsworth* that the ordinary meaning of the word "professional" is no longer limited to the "learned professions," but has a broader scope that includes skilled services such as plumbing. Contrasted to the minimal education required for ear piercing, a plumber has the equivalent of a Ph.D.

Amex argues that at the time Cox was installing the water heater, he was neither providing professional services to Zumbrun nor was he engaged in business activities. He was simply helping out a friend. But the undisputed evidence is that Zumbrun had sometimes paid Cox for similar work in the past, and that Cox was installing the water heater in the hope it would induce Zumbrun to pay him for prior work. Cox was more than simply helping out a friend, he was seeking compensation.

■ In any event, it is the type of activity, rather than actual compensation, that controls whether the professional services or business activities exclusions apply. Thus in *Smyth v. USAA Property & Casualty Ins. Co.* (1992) 5 Cal.App.4th 1470 [7 Cal.Rptr.2d 694], we held that the "business pursuits" exclusion in a homeowner's policy applied to a corporate director, even though the director sat on the board as a favor to a friend and received no compensation.

Here the undisputed facts show that the professional services and business activities exclusions eliminate any potential for coverage. We need not decide whether the exclusion for damages arising out of any premises but the insured premises applies.

Amex argues there are many potential causes for the loss that have nothing to do with any business activity or service Cox may have rendered. Amex posits seven circumstances under which it claims Allstate would have a duty to defend. But those circumstances are not based on any pleading or facts and amount to speculation. ■ Amex cannot manufacture a duty to defend by speculating about facts that might be found or ways in which the underlying complaint might be amended at some future date. (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272].)

Amex complains that the trial court erred in overruling its objection that Cox's admissions should not be binding on it. Amex cites Code of Civil

Procedure section 2033, subdivision (n)for the proposition that matters admitted in response to requests for admissions are established only against the party making the admission.

But Amex is in effect pursuing Cox's cause of action against Allstate. Amex is in that respect not a party separate from Cox within the meaning of Code of Civil Procedure section 2033, subdivision (n). Because Amex stands in Cox's shoes, it must be bound by Cox's admissions.

Here because evidence shows the underlying suit did not potentially seek damages within the coverage of the policy, Allstate had no duty to defend.

### III

Amex contends the "Additional Protection" provisions of Allstate's policy required Allstate to pay for Cox's defense.

Under the heading "Additional Protections" Allstate's policy states in part: "We will pay, in addition to the limits of liability: [¶] 1. Claim Expenses [¶] . . . a) All costs we incur in the settlement of any claim or the defense of any suit against an insured person."

Amex argues that the words "any suit" mean Allstate has a duty to pay for the cost of Cox's defense, regardless whether it had a duty to provide defense counsel or to indemnify. But Amex takes the words out of context. No reasonable insured would expect Allstate to pay defense costs for any and every suit, regardless whether the suit potentially seeks damages within the coverage of the policy. Read in context, the policy provision on which Amex relies simply means that the cost of defending a suit covered by the policy will not be deducted from the limits of liability.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Yegan, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 14, 2004. Chin, J., did not participate therein.