[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12327
_____

D.C. Docket No. 8:10-cv-02387-JSM-EAJ

AUTO-OWNERS INSURANCE COMPANY,
a Michigan corporation,

Plaintiff-Counter Defendant-Appellee,

versus

E.N.D. SERVICES, INC.,
a Florida corporation,
SOOSIE L. LAZENBY,
GEORGE W. SPOWART,

Defendants-Counter Claimants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 6, 2013)

Before DUBINA, HULL, and ALARCÓN,[*] Circuit Judges.

HULL, Circuit Judge:

Defendants-Appellants E.N.D. Services, Inc. ("E.N.D."), Soosie Lazenby, and George W. Spowart appeal the district court's order granting summary judgment in favor of Plaintiff-Appellee Auto-Owners Insurance Co. ("Auto-Owners"). In this declaratory judgment action, Plaintiff Auto-Owners sought a ruling as to what, if any, obligations it owed its insured, the Defendant, E.N.D.

Prior to this action, Defendants Lazenby and Spowart had received a default judgment against the insured, E.N.D., in a separate underlying state court action. Defendant E.N.D. then assigned its rights under its Auto-Owners insurance policy to Defendants Lazenby and Spowart. In this declaratory judgment action, Defendants moved for summary judgment, claiming coverage under the policy.

The district court held that, because of a coverage exclusion, Plaintiff Auto-Owners was not obligated to cover or defend Defendant E.N.D. in connection with Defendants Lazenby and Spowart's claims against E.N.D. After review, we affirm the district court's decision.

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

## I. BACKGROUND

### A. The Policy

In 2007, Dominic Minicozzi formed Defendant E.N.D., serving as its sole owner and employee. At that time, Defendant E.N.D. began offering home inspection services in the area around Spring Hill, Florida. Also in 2007, E.N.D. purchased a commercial general liability insurance policy from Auto-Owners (the "policy").

The policy contains several exclusions from coverage. The exclusion at issue here is prominently labeled, "EXCLUSION--INSPECTION, APPRAISAL AND SURVEY COMPANIES," (the "exclusion"). This exclusion provides that the policy "does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' for which the insured may be held liable because of the rendering or failure to render professional services in the performance of any . . . inspection . . . ."

### B. The Underlying State Court Action

On April 9, 2007, Defendant E.N.D. entered into an agreement (the "Inspection Agreement") with Defendant Lazenby to inspect a home located at 647 Ponce De Leon Boulevard, Belleair, Florida that Defendants Lazenby and Spowart planned to purchase (the "Lazenby Property"). In the Inspection Agreement, E.N.D. promised that it would perform an inspection in accordance with certain

3

professional standards, as discussed below.  Thereafter, E.N.D. completed the inspection.

Defendants Lazenby and Spowart then finalized their purchase of the Lazenby Property.  Upon moving into the home, they discovered structural defects caused by insect infestation and water damage.  Convinced that these defects existed when E.N.D. performed its inspection, Defendants Lazenby and Spowart concluded that E.N.D. had failed to fulfill its obligations under the Inspection Agreement.

On May 6, 2009, Lazenby and Spowart filed a complaint in the Sixth Judicial Circuit Court of Florida against E.N.D. and other defendants (the "underlying state court action").  Lazenby and Spowart brought claims against E.N.D. for breach of contract, negligence, and a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  They based each claim on E.N.D.'s inspection of the Lazenby property.

Initially, Auto-Owners, pursuant to the policy, defended E.N.D. in the state court action.  However, soon after the underlying state court action began, Auto-Owners determined that because of the professional services exclusion, it was not obligated to defend E.N.D. or to indemnify it for any adverse judgment levied by the state court.

4

After Auto-Owners withdrew its defense, E.N.D. did not obtain its own counsel or make any further effort to defend itself.  Accordingly, on February 11, 2010, the state court entered a default judgment against E.N.D., awarding Lazenby and Spowart $245,940.00 in damages.  Instead of immediately attempting to collect this judgment from E.N.D., Lazenby and Spowart then accepted an assignment of E.N.D.'s rights and claims against Auto-Owners under the policy.[1]

## C.      Auto-Owners's Declaratory Judgment Action

On October 22, 2010, Plaintiff Auto-Owners commenced this declaratory judgment action against Defendants E.N.D., Lazenby, and Spowart.  Auto-Owners asked the district court to declare that the policy does not afford E.N.D. coverage for Lazenby and Spowart's claims and that Auto-Owners is therefore not required to pay Lazenby and Spowart any portion of the state court's judgment.

On March 18, 2011, Defendants moved for summary judgment, arguing that the professional services exclusion applies exclusively to inspection services that can only be performed by those who have specialized training, knowledge, and skill.  Because Minicozzi (the owner and only employee of E.N.D.) received minimal specialized training and had no experience inspecting homes when he

---

[1]When they accepted the assignment, Lazenby and Spowart reserved their right to attempt to obtain any deficiency from E.N.D. after exhausting all means of collecting from Auto-Owners.

5

formed E.N.D., Defendants asked the district court to find that the exclusion does not apply to E.N.D.'s inspection of the Lazenby Property.

The district court denied Defendants' motion. It concluded that the exclusion's plain language made clear that the policy does not provide coverage for home inspections like E.N.D.'s inspection of the Lazenby Property. The district court first noted that the language in the exclusion applies broadly to "the performance of any . . . inspection . . . ." It then observed that the phrase "inspection, appraisal, [or] survey" indicates that the parties intended the exclusion to specifically apply to real estate services. Based on this language, the district court determined that the exclusion covers services rendered in the performance of a home inspection "as a home inspection is undeniably both a type of inspection and related to the real estate business."

Next, the district court concluded that such home inspection services are inherently "professional," and therefore covered by the exclusion. The district court articulated these five reasons for its conclusion: (1) the parties to the Inspection Agreement "clearly provided for the deliverance of professional services . . ."; (2) after the events at issue occurred, Florida's legislature enacted a statute requiring specific training for, and licensing of, home inspectors; (3) "home inspections require specialized skills and knowledge unavailable to the general public"; (4) various professional organizations have long promulgated professional

6

standards for the home inspection industry; and (5) courts construing similar exclusions have held such CGL policy provisions to apply to "non-traditional professional[s] as long as the exclusion of such services was fairly encompassed by the policy."

After determining that Defendants were not entitled to summary judgment, the district court informed the parties that it was considering sua sponte entering summary judgment in favor of Plaintiff Auto-Owners. Defendants received 14 days to file a response stating why Plaintiff Auto-Owners was not entitled to summary judgment, in light of the district court's conclusion regarding the exclusion. The district court cautioned Defendants that it "[would] not entertain any further arguments purporting to show that the [exclusion] is inapplicable."

Defendants did not heed the district court's admonition. In response to the order, they filed a motion requesting that the district court reconsider its decision regarding the exclusion's applicability. Accordingly, the district court denied the motion for reconsideration and sua sponte entered summary judgment in favor of Plaintiff Auto-Owners on all counts.

Defendants timely appealed the district court's order. [2]

---

[2]We review a district court's declaratory judgment ruling de novo where, as here, the district court adjudicated a question of law based on its interpretation of an insurance policy. See Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001). In addition, in this diversity case, we apply the substantive law of the forum state, Florida. See id.; see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938). The parties agree that Florida law applies to this insurance dispute.

## II. DISCUSSION

On appeal, we consider whether the district court erred in finding that E.N.D. rendered a <u>professional</u> service in the inspection of the Lazenby Property.[3]

Under Florida law, insurance contracts like the one at issue here "are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." <u>U.S. Fire Ins. Co. v. J.S.U.B., Inc.</u>, 979 So. 2d 871, 877 (Fla. 2007); <u>see also</u> <u>Penzer v. Transp. Ins. Co.</u>, 29 So. 3d 1000, 1005 (Fla. 2010); <u>Swire Pac. Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So. 2d 161, 165 (Fla. 2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter."). An insurance contract is ambiguous when "the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." <u>State Farm Mut. Auto. Ins. Co. v. Menendez</u>, 70 So. 3d 566, 570 (Fla. 2011) (internal quotations omitted); <u>see also</u> <u>Garcia v. Fed. Ins. Co.</u>, 969 So. 2d 288, 291 (Fla. 2007) (same). However, "simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous." <u>Swire Pac. Holdings</u>, 845 So. 2d at 165. When a policy provision is unambiguous, the provision is given its plain meaning. <u>See</u>, <u>e.g.</u>, <u>Penzer</u>, 29 So. 3d at 1005.

---

[3]On appeal, Defendants do not claim lack of adequate notice before the district court's summary judgment ruling, but instead focus on the merits of the coverage issue involving the exclusion.

Florida courts narrowly construe policy provisions that purport to exclude coverage.  See Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) ("[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses."); see also Chandler v. Geico Indem. Co., 78 So. 3d 1293, 1300 (Fla. 2011).  Nevertheless, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision."  Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005); see also Am. Equity Ins. Co. v. Van Ginhoven, 788 So. 2d 388, 390 (Fla. 2001) ("Clearly worded exclusions in an insurance policy are to be enforced as long as they are clear, unambiguous and do not violate public policy.").

We agree with the district court that the term "professional services" as used in the exclusion is unambiguous.  Giving the term its plain meaning, we conclude that the district court did not err when it determined:  (1) that E.N.D. was not entitled to coverage under the policy for damages that resulted from E.N.D.'s inadequate inspection of the Lazenby Property; and (2) that, thus, Lazenby and Spowart, as assignees of E.N.D., have no claim against Auto-Owners under the policy.

Here, the CGL policy exclusion uses but does not define "professional services."  Florida's Third District Court of Appeal ("Florida DCA") recently

confronted similar circumstances in Aerothrust Corp. v. Granada Insurance Co., 904 So. 2d 470 (Fla. 3d Dist. Ct. App. 2005). [4] There, a CGL policy contained a similar professional services exclusion. Aerothrust, 904 So. 2d at 471–72. The insured inspected and maintained hoists at a manufacturer's plant. Id. at 471. Five months after the insured inspected a hoist, the hoist failed while the manufacturer was using it to lower a jet engine. Id. The failure caused damage to the jet engine, resulting in financial losses to the manufacturer. Id. The manufacturer sued the insured, alleging that the insured's negligent inspection of the hoist proximately caused its losses. Id. The insurer then sought a declaratory judgment that it had no duty to defend or indemnify its insured, based in part on the professional services exclusion. Id.[5]

In Aerothrust, the Florida trial court entered summary judgment in favor of the insurer based on the professional services exclusion. Id. at 472. The Florida

---

[4]The Supreme Court of Florida has not considered this precise issue. Therefore, in this diversity case, we must predict how that court would rule. Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011). Although we are not bound by decisions of the Florida District Courts of Appeal, those courts' decisions "provide data for this prediction." Id. Accordingly, we apply the intermediate appellate courts' decisions unless we find "persuasive evidence that the highest state court would rule otherwise." Bravo v. United States, 577 F.3d 1324, 1325 (11th Cir. 2009) (per curiam) (internal quotation omitted). We find no such evidence here.

[5]The professional services exclusion at issue in Aerothrust provided, in part, "that the insurance does not apply to property damage that occurs 'due to the rendering or failing to render any professional services or treatments.'" 904 So. 2d at 472. The professional services exclusion featured "a non-exclusive list of [professional] services . . . ." Id. The list included: "legal, accounting, or advertising services; engineering, drafting, surveying, or architectural services; supervisory, inspection, or appraisal services; medical services; cosmetic services; testing or consulting services; and data processing or computer programming services." Id.

DCA reversed as to the professional services exclusion.  Id.[6]  The Florida DCA began by noting that the CGL policy at issue did not define the term "professional services."  Id.  Thus, the Florida DCA turned to the dictionary definition of "professional," given as, "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency."  Id. (quoting Black's Law Dictionary 1246 (8th ed. 2004) (alteration in original)).

In light of this definition, the Florida DCA concluded that, although the professional services exclusion at issue referred to "inspection . . . services," "only those inspection services which require specialized training should be considered professional services."  Id.  The hoist inspection services at issue did not meet these criteria.  Id.  The Florida DCA stressed that:  (1) the insured inspection firm did not require its inspectors "to have any specialized training or experience"; (2) there was "no entity that certifie[d] or accredit[ed] people who perform[ed] such [hoist] inspections, or that regulate[d] or set[] forth standards for such personnel"; and (3) this suggested that hoist inspecting did not require "a high level of training and proficiency" and therefore was not a "professional service."  Id.

Like the Florida DCA in Aerothrust, we consider whether, at the time that the events occurred here, a Florida home inspector like E.N.D performs a professional service and receives "specialized training" before inspecting a home.

---

[6]The Florida DCA affirmed the trial court's conclusion as to a separate policy exclusion, and therefore did not remand.  Id. at 472–73.

11

First, during the relevant period, industry standards existed for home inspectors. The American Society of Home Inspectors, Inc. (the "ASHI"), formed in 1976, describes itself as a "not-for-profit <u>professional</u> association for home inspectors" and states that its purpose is "to establish and advocate high standards of practice and a strict code of ethics for [its] member community." <u>See</u> <u>About the American Society of Home Inspectors, Inc.</u>, American Society of Home Inspectors, http://www.ashi.org/about/ (last visited Feb. 5, 2013) (emphasis added).[7] The <u>ASHI Standards of Practice</u> (the "<u>ASHI Standards</u>") became effective on October 15, 2006 and set forth precise requirements for the competent performance of a home inspection. <u>See</u> American Society of Home Inspectors, Inc., <u>ASHI Standards of Practice</u> (2006), <u>available at</u> http://www.homeinspector.org/docs/standards.pdf (last visited Feb. 5, 2013). To comply with these <u>ASHI Standards</u>, a home inspector needs specialized skills and training. This contrasts with <u>Aerothrust</u>, where no entity set forth standards for hoist inspection. <u>See</u> 904 So. 2d at 472.

Second, E.N.D. specifically promised Lazenby and Spowart that its inspection of the Lazenby Property would comply with the <u>ASHI Standards</u>.[8] In

_____

[7]We take judicial notice of these facts. <u>See</u> Fed. R. Evid. 201(b).

[8]We do not treat the Inspection Agreement as controlling our analysis. Rather, we treat it is as merely one factor among many suggesting that E.N.D.'s inspection of the Lazenby Property, like all home inspections, was a "professional service," within the meaning of the exclusion. The Inspection Agreement merely confirms that Defendants Lazenby and Spowart,

12

the Inspection Agreement, E.N.D. and Lazenby and Spowart "understood and agreed that [E.N.D.'s] inspection [would] be performed according to the STANDARDS OF PRACTICE of the AMERICAN SOCIETY OF HOME INSPECTORS, INC. . . . ."  Moreover, in promotional materials that Lazenby and Spowart received before they contracted with E.N.D., E.N.D. informed consumers that "[a] close look by a <u>knowledgeable professional</u> [could] provide a wealth of valuable information . . . ."  E.N.D. then purported to be "a truly professional property inspection firm . . . ."

Third, in the underlying state court action, Lazenby and Spowart alleged that E.N.D. breached the Inspection Agreement by failing to provide them with an inspection report "prepared by a knowledgeable <u>professional</u> inspector" and "completed in a manner which exceeded the stringent requirements of . . . the [ASHI]."  As for the negligence claim, Lazenby and Spowart alleged that E.N.D. "undertook a duty to [them] to conduct an inspection . . . and to prepare an accurate report of its inspection in a manner exceeding the stringent requirements of ASHI . . . ."  Lazenby and Spowart alleged that E.N.D. negligently breached this duty of care. [9]  The fact that E.N.D. ultimately failed to comply with the <u>ASHI Standards</u>

---

before E.N.D. inspected the Lazenby Property, were aware that home inspections generally are "professional services."

[9]As for the FDUTPA claim, Lazenby and Spowart alleged that E.N.D. made false representations to them regarding its ability to "provide a report exceeding the stringent requirements of ASHI as a result of a thorough inspection of readily accessible areas of the

does not change the fact that, in 2007, the ASHI Standards existed to ensure that home inspectors like Minicozzi, who voluntarily chose to be governed by them, had adequate training and skills.

It is true that, in 2007, the State of Florida did not require home inspectors to be licensed.  Only in 2010 did Florida's statutes regulating the home inspection industry take effect.  See Fla. Stat. §§ 468.83–468.8325.[10]  We view the State's decision to formally regulate the home inspection industry as an acknowledgement of the industry's preexisting character as one that provides services that are professional in nature and is therefore in need of state regulation.[11]

Fourth, we also recognize that E.N.D.'s Minicozzi stated that, before he began inspecting homes for E.N.D., he received "on-the-job training" from an experienced home inspector to "acquaint [him] with the business."  Defendants argue that, because Minicozzi received only on-the-job training, he did not render a

---

[Lazenby] Property . . . ."  This false representation "amount[ed] to unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices . . . in violation of the [FDUTPA]."

[10]The Florida Legislature enacted these provisions during its 2007 session, and the governor of Florida approved them on June 27, 2007.  See Act of June 27, 2007, No. 2234, 2007 Fla. Sess. Laws Serv. 235 (2007).  However, the enacting legislation provided that the statutes would not take effect until July 1, 2010.  Id.  The provisions require anyone who wishes to perform home inspections in Florida to obtain a license, which the State will issue only after the applicant completes certain coursework.  Fla. Stat. §§ 468.8313–14.  Moreover, the provisions impose continuing education requirements on licensed home inspectors.  Fla. Stat. § 468.8316.

[11]Significantly, Florida law now defines "[h]ome inspection services" as "a limited visual examination of [certain] readily accessible installed systems and components of a home . . . for the purposes of providing a written professional opinion of the condition of the home."  Fla. Stat. § 468.8311(4).

14

"professional service" when he inspected homes for E.N.D.  Defendants are wrong. Courts construing similar provisions have repeatedly held that a service is "professional" even though the skills that it demands can be acquired primarily through work experience.  See, e.g., Nat'l Ben Franklin Ins. Co. of Ill. v. Calumet Testing Servs., Inc., 60 F. Supp. 2d 837, 845 (N.D. Ind. 1998) ("For [a professional services] exclusion to apply, the activity need not be one for which traditional professional training, e.g. doctor, lawyer or engineer, is required."); Hollingsworth v. Commercial Union Ins. Co., 256 Cal. Rptr. 357, 362 (Cal. Ct. App. 1989) (ear-piercing constituted the rendering of professional services, although "the activity . . . did not require extensive training or technical skill" and the only training that the insured and her employees received was a brief "instruction in the use of the ear-piercing instrument by a manufacturer's representative").

Perhaps Minicozzi was inadequately trained or would have benefitted from additional training before he began performing home inspections unassisted. However, in concluding that E.N.D. rendered "professional services," we "focus[] upon the particular act itself, as opposed to the character of the individual engaging in the act." Estate of Tinervin v. Nationwide Mut. Ins. Co., 23 So. 3d 1232, 1237 (Fla. 4th Dist. Ct. App. 2009).  The act undertaken by E.N.D., through Minicozzi—inspecting a home—required specialized skills and training in order to

15

be completed effectively.  Minicozzi's alleged shortcomings simply prove this proposition.

E.N.D. cannot take refuge in Minicozzi's alleged incompetence in home inspections.  A source provider's incompetence does not render "professional services" exclusions, like the one here, inapplicable.  In effect, Defendants ask us to construe the professional services exclusion so that the least competent home inspector, i.e., one who was not adequately trained in the first place, would receive coverage from a CGL policy for a work-related activity, but a competent, well-trained home inspector would not.  The test is not Minicozzi's level of competence but whether home inspections require specialized skills and training.  They do and thus the professional services exclusion applies.

### III.  CONCLUSION

E.N.D. rendered a "professional service" when it inspected the Lazenby Property.  The exclusion's plain language establishes that Auto-Owners owed no duty to defend E.N.D. in the underlying state court litigation where Lazenby and Spowart alleged that E.N.D. failed to competently inspect the Lazenby Property.  Because Auto-Owners owed no duty to defend E.N.D., it does not owe any duty to indemnify E.N.D. for the adverse monetary judgment rendered by the state court.  See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co., 16 So. 3d 904, 906 (Fla. 2d Dist. Ct. App. 2009) (explaining that "because the duty to indemnify is

16

narrower than the duty to defend[,]" it "cannot exist if there is no duty to defend").

Accordingly, Auto-Owners was entitled to summary judgment on all counts.

In light of the foregoing, we affirm the district court's order granting Auto-Owners summary judgment on all counts.

**AFFIRMED.**