566 So.2d 293 (1990)
QUALITY IMPORTS, INC., Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellee.
No. 89-2933.
District Court of Appeal of Florida, First District.
August 6, 1990.
Rehearing Denied September 5, 1990.
Walter J. Smith of Smith, Grimsley & Remington, Fort Walton Beach, for appellant.
*294 Mark J. Upton of Brown, Hudgens, Richardson, P.C., Mobile, Ala., for appellee.
NIMMONS, Judge.
Appellant, the insured under an automobile collision insurance policy, appeals the trial court's final judgment, entered after a nonjury trial, ruling that an automobile belonging to appellant was excluded from coverage under the policy at the time that the vehicle was damaged in an accident. We agree that the trial court erroneously found a lack of coverage, and therefore reverse.
Appellant is an automobile leasing and sales agent. Although the leasing and sales transactions are arranged by appellant, the final transaction is actually entered into between the lessee or buyer and a third party upon whose behalf appellant arranges the transaction. Prior to the completion of the transaction (which requires the approval of the lessor or seller), the automobile is the property of appellant. If the transaction is a lease, the third-party lessor purchases the vehicle from appellant at the time that the lease agreement is finalized. St. Paul Fire and Marine Insurance Company, appellee, provides collision insurance for appellant's automobiles. The exclusionary clause at issue provides that the collision policy does not cover automobiles "for which any dealer has agreed to obtain insurance," and the issue in this appeal is whether the trial court erred in finding that this exclusion applies to the instant case.
The controversy arises from a transaction between appellant and Douglas Baggs. Baggs entered into a preliminary agreement with appellant to lease the vehicle in question, and was allowed to leave the premises of the dealership with the vehicle. The transaction was not yet final at this point because the approval of the lessor had not yet been obtained. The relinquishment of the vehicle at this stage of the negotiation is designated a "spot delivery," and is carried out with the expectation that a lease will be entered into. Appellant's company policy requires that before a customer is permitted to leave with a vehicle on a "spot delivery" basis, the salesman handling the transaction is to speak with the customer's insurance agent to verify that the customer has insurance on the vehicle. In the instant case, the salesman, Dwayne Carlson, did not follow company policy, in that Baggs was permitted to call the agent himself and leave with the vehicle upon his assurance to the salesman that he had arranged to obtain insurance. Baggs testified that his insurance agent was not available when he called, but he did speak to an employee of the insurer. Baggs told this employee to speak to the agent and make the necessary arrangements to obtain insurance coverage. According to Baggs' testimony, he believed at that time that he had insurance. It appears that Baggs only asked for liability coverage, and not collision coverage, when he called his insurer.
This transaction between appellant and Baggs never ripened into a completed lease, because shortly after leaving the dealership Baggs was involved in an accident in which the vehicle sustained serious damages. The next day, Baggs informed appellant of the accident and also of the fact that Baggs' insurer had informed him that Baggs' insurance did not cover the vehicle. James Ramsden, an employee of appellant, testified (without any hearsay objection being raised) that Baggs' agent told him that Baggs' insurer carried only Baggs' business account and not his personal account.[1] Appellee also declined coverage. When appellant brought suit to enforce the insurance policy, the trial court found that the "other insurance" clause was triggered when appellant required Baggs to obtain insurance.[2]
This case therefore turns upon whether appellant "agreed to obtain other insurance" prior to releasing the automobile *295 to Baggs. Where a term in an insurance contract is ambiguous, the courts will construe the policy language in favor of the insured and against the insurer. Triano v. State Farm Mutual Automobile Insurance Company, 565 So.2d 748 (Fla. 3d DCA 1990); Herring v. First Southern Insurance Company, 522 So.2d 1066 (Fla. 1st DCA 1988); Davis v. Nationwide Life Insurance Company, 450 So.2d 549 (Fla. 5th DCA 1984); Rowland v. National States Insurance Company, 295 So.2d 335 (Fla. 1st DCA 1974). Where the language is susceptible of two different interpretations, the interpretation sustaining coverage will be adopted. Herring at 1068. In keeping with this principle, terms of exclusion are to be narrowly construed. Triano; Hartford Accident and Indemnity Company v. Phelps, 294 So.2d 362 (Fla. 1st DCA 1974). Where the provision is not ambiguous, however, there is no occasion for employing the rule of construction against the insurer, and the court simply applies the plain meaning of the provision. Home Indemnity Company v. Alday, 213 So.2d 13 (Fla. 1st DCA 1968).
We find that in the instant case the language of the exclusionary clause is at least ambiguous as to whether appellant "agreed to obtain other insurance" in its dealings with Baggs.[3] Various reasons for the insurance verification requirement were offered by employees of appellant. These witnesses testified that the verification requirement assured that the customer was who he claimed to be. Furthermore, verifying insurance coverage establishes that the customer is in good standing with his insurer. One witness explained that the salesmen do not wish to waste time dealing with someone who will be unable to obtain insurance on the vehicle. As pointed out by another witness, an insurer will generally be willing to add another vehicle to the policy of an insured who is in good standing with the insurance company. To some extent, the verification requirement is a sales tool to induce the customer to make a commitment and to facilitate the insurance arrangements expected to be made in connection with the final transaction. Witnesses also pointed to a concern that the customer comply with State financial responsibility requirements that a driver carry liability insurance. If the insurance company expresses an unwillingness to insure the vehicle, then some other arrangements will be made, possible, to obtain coverage for the vehicle. The customer is not permitted to leave with the vehicle until adequate verification of insurance coverage is obtained.
When a lease or sale transaction is actually ready to be consummated, a financing and insurance secretary makes the final arrangements, including arranging for the obtaining of collision insurance upon the vehicle. At this time the insurer is given specific information, including the name of the lessor or lienholder. When the transaction is finalized, the purchaser or lessee is required to obtain collision insurance upon the vehicle. The collision policy is titled in the name of the lessor or lienholder/seller, whose identity is often unknown at the time of the spot delivery because appellant represents several organizations. Appellant's former business manager testified that the practice in the industry is that the leasing agent's collision insurance policy continues to cover the vehicle until the transaction is finalized.
Turning to the facts of the transaction between appellant and Baggs, we find that these events do not clearly and unambiguously establish that appellant's salesman "agreed to obtain other insurance." Carlson, the salesman who dealt with Baggs, testified that he did not know the reason for the verification requirement. The evidence of this transaction does not clearly establish that Baggs and appellant's representatives believed at that time that Baggs had obtained collision insurance on the vehicle. Additionally, to find that appellant had "agreed to obtain other insurance," when it was subsequently established that no such insurance existed, would require a strained and expansive reading of the exclusionary clause, violating the requirement *296 that exclusionary clauses be read narrowly.[4]
Accordingly, we reverse and remand with directions to vacate the judgment appealed and to enter judgment in favor of appellant.
REVERSED.
SMITH and ALLEN, JJ., concur.
NOTES
[1] Baggs leased the automobile for his own personal use.
[2] Other parties were also named in appellant's suit. The trial court absolved all of these other defendants from liability on grounds which have not been appealed.
[3] We construe the term "other insurance" to refer to other collision insurance.
[4] The verification requirement which Carlson failed to follow is not a condition of the insurance contract between the parties, but rather is appellant's company policy.