UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2432
_____

REPUBLIC FRANKLIN INSURANCE COMPANY,
Appellant

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-17-cv-04593)
U.S. District Judge:  Honorable William J. Martini
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 4, 2023
_____

Before: SHWARTZ, CHUNG, and MCKEE, <u>Circuit Judges</u>

(Opinion filed: December 5, 2023)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

Republic Franklin Insurance Company ("Republic") appeals the District Court's

order granting summary judgment declaring that Travelers Casualty Insurance Company

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

of America ("Travelers") did not owe a duty to defend and indemnify its insured, Borden-Perlman Insurance Agency, Inc. ("B-P"), in a tort action in which Republic, as another insurer of B-P, bore the litigation and settlement costs. Because Travelers had no duty to defend or indemnify B-P in the tort action, we will affirm.

I

B-P, an insurance agency, had insurance policies with Travelers and Republic. Travelers insured B-P under a commercial general liability policy (the "CGL Policy"). The CGL Policy provided B-P with a defense and indemnification against any suit seeking "damages because of 'personal . . . injury[.]'" App. 991. "Personal injury" included injury arising out of "[o]ral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" App. 1000. However, the CGL Policy's Financial Professional Services Exclusion (the "FPS Exclusion") exempted from coverage "'[p]ersonal injury' . . . arising out of providing or failing to provide 'financial professional services' by any insured to others." App. 1008. "Financial professional services" include (1) "[w]ith respect to any contract or treaty of insurance[,] . . . [a]dvising, inspecting, reporting or making any recommendation," and (2) "[p]erforming any . . . claim[] consulting, . . . inspection, investigative or survey service," App. 1008-09.

Republic insured B-P under an errors and omissions policy (the "E&O Policy"). The E&O Policy insured B-P for its "professional services," which included "[p]roviding insurance program and risk management services and advice." App. 1071.

While the policies were in effect, B-P hired Anthony Trombetta, a former employee of Orchestrate H.R., one of B-P's competitors. After Trombetta joined B-P, he allegedly used Orchestrate's confidential information to "pursue[]" Orchestrate's current and prospective clients and allegedly made "a variety of false and misleading statements" to them, such as that "(1) Orchestrate is not timely processing insurance claims[,] (2) Orchestrate is not providing the discounts it is promising[,] (3) Orchestrate is using incorrect insurance forms[,] and (4) insurers are not 'allowed' to use Orchestrate," App. 299-300. Orchestrate sued B-P in Texas for, among other things, defamation. B-P asked Republic and Travelers to provide a defense and indemnification, but both declined.

B-P thereafter sued only Republic for insurance coverage in New Jersey state court and obtained a judgment declaring that Republic had a duty to defend it in the Texas lawsuit. The state trial court explained:

> [T]he defamatory statements that are alleged in [Orchestrate's] complaint clearly could be construed to be ones that arose out of [B-P's] providing [] professional services. . . . [U]nder the test here[,] all doubts are resolved against the defendant[,] and if there's a possibility to construe [the E&O Policy] in favor of the insured that's what the Court's required to do. So in light of that[,] I'm going to find that there was a duty to defend[.]

App. 682.[1] The Appellate Division affirmed, holding that "[v]iewing Orchestrate's pleadings with liberality, as [it] must[,] . . . the defamation [allegations] . . . may potentially arise out of negligent misleading and false statements made during the course

---

[1] The court also rejected Republic's motion for reconsideration, noting that "all that is needed to trigger [Republic's] duty to defend is the possibility that the alleged wrongful conduct arose out of [B-P's] business, . . . [and] the [c]ourt correctly determined that the possibility existed." App. 836.

3

of rendering services to various clients." Borden-Perlman Ins. Agency, Inc. v. Utica Mut. Ins. Co., A-1313-14T3, 2016 WL 1368589, at \*4 (App. Div. Apr. 7, 2016). The New Jersey Supreme Court denied Republic's petition for certification, Borden-Perlman Ins. Agency, Inc. v. Utica Mut. Ins. Co., 147 A.3d 445 (Table), 446 (N.J. 2016).

Republic allegedly spent millions of dollars defending B-P. To recoup at least some of those costs, Republic sued Travelers in the District Court seeking, among other things, a judgment declaring that Travelers had a duty to defend and indemnify B-P under the CGL Policy.[2] See Republic Franklin Ins. Co. v. Travelers Cas. Ins. Co., No. 17-cv-4593, 2022 WL 2473348, at \*1 (D.N.J. Jul. 6, 2022). On cross motions for summary judgment, the Court ruled that Travelers owed no duty to defend B-P, holding that (1) "the doctrine of collateral estoppel . . . bars Republic from relitigating the fundamental issue of whether B-P's alleged defamatory statements were made in the course of rendering professional services," id. at \*6, and (2) in any event, Orchestrate's "claims fall within the scope of Republic's E&O Policy . . . [and] are excluded from Travelers' CGL Policy under the [FPS] Exclusion" because the alleged "defamatory statements [occurred]

---

[2] B-P assigned its rights under the CGL Policy to Republic before Republic filed the instant action.

4

in the course of rendering professional insurance services to clients or potential clients," id. at *7-8.

Republic appeals.

II[3]

For the reasons explained herein, we will affirm the District Court's declaration in favor of Travelers and its denial of Republic's summary judgment motion. Even if Republic were estopped from relitigating the state court's determination that B-P's alleged conduct could have arisen out of B-P's provision of insurance services,[4] this conclusion does not foreclose the possibility that the conduct could be construed as generally commercial, and therefore we must undertake an analysis of the CGL policy and, in doing so, we conclude that B-P's conduct falls within the FPS exclusion and thus Traveler's did not have a duty to defend.

To determine whether the FPS Exclusion in Travelers' CGL Policy is triggered, we must review the Texas complaint[5] and the language of the FPS Exclusion. Flomerfelt

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's ruling on summary judgment and collateral estoppel de novo. Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 265 (3d Cir. 2008). The parties agree that there is no material difference between New Jersey and Texas insurance law for purposes of assessing Travelers' duty to defend, and so we apply the law of New Jersey, the forum state. See Rowe v. Hoffman-LaRoche, Inc., 917 A.2d 767, 771 (2007) ("If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue.").

[4] The District Court found that Republic's suit is barred by collateral estoppel. We need not decide that issue here.

[5] We need not decide whether it was proper for the District Court to consider the allegations in the second amended complaint filed in Texas because, as explained herein, the allegations in the initial complaint alone trigger Republic's coverage allegations and fall within the CGL Policy's FPS Exclusion.

v. Cardiello, 997 A.2d 991, 999, 1005 (N.J. 2010) (explaining that to determine whether an insurer has a duty to defend, or if an exclusion applies, courts compare "the complaint and the policy side-by-side").[6]

"In general, insurance policy exclusions must be narrowly construed" against the insurer. Princeton Ins. Co. v. Chunmuang, 698 A.2d 9, 16-17 (N.J. 1997). Whether a professional services exclusion applies turns on whether the liability "flowed directly" from a professional activity. Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 985 (3d Cir. 1988). In determining whether liability "flowed directly" from a professional activity, courts consider the "character of the [insured's alleged] conduct" and the "nature of the [insured's] services[.]" Id. at 984.

Here, the CGL Policy obligated Travelers to defend and indemnify B-P against any suit seeking damages for defamation, unless the defamation arose in the course of rendering "'professional services' by any insured to others."[7] App. 1008. The FPS Exclusion defines "[f]inancial [p]rofessional [s]ervices" to capture (1) "[w]ith respect to any contract or treaty of insurance[,] . . . [a]dvising, inspecting, reporting or making any recommendation," and (2) "[p]erforming any . . . claim [] consulting, . . . inspection, investigative or survey service[.]" App. 1008-09.

---

[6] We review the interpretation of the CGL Policy de novo. Regents of Mercersburg College v. Rep. Franklin Ins., 458 F.3d 159, 163 (3d Cir. 2006).

[7] The FPS Exclusion covers professional services "provide[d] . . . by [the] insured to others." App. 1008. The insured here is B-P, and the services were provided to Orchestrate's current and prospective clients.

6

Reviewing the Texas "complaint with liberality," and resolving all doubts in favor of the insured, Abouzaid, 23 A.3d at 346, we conclude that the allegations against B-P fall within the FPS Exclusion. At its core, the complaint alleges that B-P used confidential information obtained from Trombetta to inform Orchestrate's current and prospective clients that Orchestrate (1) failed to timely process claims, (2) did not provide the discounts it promised, (3) used "incorrect insurance forms," and that (4) "insurers are not 'allowed' to use Orchestrate." App. 300. These statements go beyond general commercial solicitation because they discuss considerations unique to the insurance needs of specific clients and are, accordingly, the kind of "advising" or "recommend[ing]" contemplated by the FPS Exclusion.[8] App. 1032. Moreover, these communications were alleged to have been made when B-P had pre-existing professional relationships with the recipients of the communications. Because the FPS Exclusion applies, Travelers did not have a duty to defend or indemnify B-P, and Republic's assertion that Travelers had such a duty lacks merit.

---

[8] This outcome is consistent with what an insured who has both a commercial general liability policy with a professional services exclusion and an errors and omission policy would expect. Errors and omissions policies function to cover risks "unique to and inherent in the practice of a particular profession[,] . . . which transcend . . . the customary business risks," which are protected by general liability policies, and thus it is "fair to assume that an insured who has both [policy types] has so opted based on the understanding that the general liability policy does not cover professional negligence and the errors and omissions policy does not cover general business liability." Search EDP, Inc. v. Am. Home Assurance Co., 632 A.3d 286, 288-89 (N.J. Super. Ct. 1993) (citing Nationwide Mut. Ins. Co. v. Am. Reinsurance Co., 796 F. Supp. 275, 280 (S.D. Ohio 1991), aff'd, 961 F.2d 1578 (6th Cir. 1992) (noting in a coverage dispute between a general liability insurer and an errors and omissions insurer that "a policy excluding errors and omissions coverage would logically exclude liabilities arising out of actions inherent in the practice of that particular profession") (citations omitted)).

## III

For the foregoing reasons, we will affirm.