SPA DE SOLEIL, INC., Plaintiff,

v.

**GENERAL STAR INDEMNITY COMPANY, Defendant.**

No. CV 10–9187 SVW (FFMx).

United States District Court, C.D. California.

May 25, 2011.

---

Arik Shafir, Law Offices of Gene J. Goldsman, Gene J. Goldsman, Gene J. Goldsman Law Offices, Santa Ana, CA, for Plaintiff.

Alan H. Barbanel, Stephen L. Cope, Barbanel and Treuer PC, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEPHEN V. WILSON, District Judge.

## I. Introduction

Plaintiff Spa de Soleil, Inc. ("Plaintiff"), a company that manufactures and distributes cosmetics and skin care products, sued its insurer General Star Indemnity Company ("Defendant"), alleging that Defendant failed to defend and indemnify Plaintiff in an underlying suit captioned *Issimo International, LLC v. Spa De Soleil, Inc.*, Los Angeles Court Superior Court No. BC350735 ("the *Issimo* suit"). Plaintiff's Complaint contains only one cause of action for breach of contract. Defendant filed the present Motion for Summary Judgment ("the Motion"), contending that Plaintiff's insurance policy with Defendant provides no coverage for the *Issimo* suit and it thus had no duty to defend or indemnify Plaintiff. For the reasons stated below, Defendant's Motion is GRANTED.

## II. Relevant Facts

### A. Plaintiff's Insurance Policy

Plaintiff was a policyholder under General Star Policy number IG35340 ("the Policy"), which primarily provided Plaintiff commercial general liability (CGL) coverage for bodily injury or property damage.[1] The Policy defines "property damage" to mean: "Physical injury to tangible property, including all resulting loss of use of that property .... [and] [l]oss of use of tangible property that is not physically injured." (Policy at 21). The Policy generally restricts coverage to damages caused by an "occurrence," which is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." (Policy at 20).

The Policy contains numerous exclusions typical to CGL policies, such as exclusions for damages to or arising from Plaintiff's products, Plaintiff's work (including for representations as to quality of work), and failures to fulfill contractual obligations.

The Policy also contains a number of endorsements. One of these endorsements, Endorsement 11, is titled "PROFESSIONAL LIABILITY." It states: "It is agreed that COVERAGE A. BODILY AND PROPERTY DAMAGE LIABILITY is amended to include Professional Liability arising out of acts, errors, or omissions in the rendering or failure to render professional services as respects the manufacture and/or distribution of cosmetics and demonstration of cosmetics." The effect of Endorsement 11 on this Policy is the primary dispute in this case.

### B. The *Issimo* Suit

On April 13, 2006, litigation was filed against Plaintiff in the *Issimo* suit, which

---

1. There are no allegations of bodily injury in this case.

arose from a business relationship between Plaintiff and Issimo International, Inc. ("Issimo") whereby Plaintiff was to "forumalte[e], design, produce, supply, store and/or promote [cosmetic] products" for Issimo, which would then sell the cosmetic products to the public under its private label. (Issimo Complaint ¶ 7). Issimo alleged that it paid Plaintiff more than $500,000 for products but that Plaintiff failed to deliver the contracted quantities of products and that the products that were delivered were defective under the contract and unsuitable for sale. Issimo alleged the following causes of action: (1) accounting; (2) breach of contract; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness; (6) intentional misrepresentation; (7) concealment; (8) false promise; (9) negligent misrepresentation; (10) declaratory relief; and (11) common count—money had and received.

Paragraph 10 of the complaint in the *Issimo* suit contains the primary factual allegations as to how Plaintiff failed to meet its obligations under the contract:

(a) [Plaintiff] supplied goods to ISSIMO that were made from ingredients that were not quality or delivered the therapeutic benefits of natural oils and extracts Issimo contracted;

(b) [Plaintiff] failed to meet the quantity, time of delivery, and quality requirements of the contract, and would not disclose full ingredient decks as required by law for disclosure on product packaging;

(c) Many of the goods supplied by [Plaintiff] were made from faulty ingredients, dried out, or spoiled, rendering the goods unsuitable for any reasonable or intended purpose;

(d) Many of the goods were either delivered unreasonably late, or were never delivered to ISSIMO at all;

(e) [Plaintiff] improperly stored products and/or used packaging and shipping materials that contributed to the product degradation;

(f) [Plaintiff] over-charged ISSIMO, and demanded payment from ISSIMO for goods undelivered;

(g) Many of the products that were supplied and produced by [Plaintiff] were defective, and failed to meet the specifications called for in the contracts. The [Plaintiff's] products did not conform to the CTFA technical guide and represented by [Plaintiff];

(h) The products supplied were unfit for their reasonable and intended purposes.

Similarly, Paragraph 38 discusses products that failed due to "faulty formulas." Paragraph 9 of alleges that Issimo "paid for some products in advance, and paid for some as expenses were incurred."

On or about May 3, 2006, Defendant received Plaintiff's tender for defense and indemnity in the *Issimo* suit. The only documentation tendered was Issimo's complaint. On May 15, 2006, Defendant denied coverage because the allegations in the Issimo complaint were not within the coverage of the Policy. However, the letter denying coverage urged Plaintiff to bring to Defendant's attention any additional information that Plaintiff wished Defendant to consider. The letter further suggested that Plaintiff contact Defendant to discuss the content of the denial letter should it be deemed helpful. Plaintiff never responded to this letter.

Instead Plaintiff defended itself in the *Issimo* suit for seventeen months before settling the case midway through a jury trial. Plaintiff expended more than $200,000 defending the lawsuit and paid more than $600,000 to settle the case. De-

fendant had no knowledge of Plaintiff's expenditures on its defense and settlement until the present lawsuit was filed.

## III. Legal Standard

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its Rule 56(c) burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party" over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Under Local Rules 56–2 and 56–3, these triable issues must be identified in the non-moving party's "Statement of Genuine Issues" and supported by "declaration or other written evidence." *See Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 779 (9th Cir.2010) ("Federal Rule of Civil Procedure 56(e)(2) requires a party to 'set out specific facts showing a genuine issue for trial.' ") If the non-moving party fails to identify the triable issues of fact, the court must treat the moving party's evidence as uncontroverted. Local Rule 56–3; *see also International Longshoremen's Ass'n, AFL–CIO v. Davis,* 476 U.S. 380, 398 n. 14, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) ("[I]t is not [the Court's] task *sua sponte* to search the record for evidence to support the [parties'] claim[s]."); *Carmen v. San Francisco Unified School District,* 237 F.3d 1026, 1029 (9th Cir.2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").

## IV. Discussion

### A. Applicable Law

▮ The interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). The approach followed by courts in insurance policy interpretation in California is as follows:

Where a case turns on the interpretation of an insurance policy, the court reviews the policy's terms under the ordinary rules of contract interpretation. If the policy language is clear and explicit, it governs. If the policy terms are ambiguous or uncertain, the court must attempt to determine whether coverage is

consistent with the insured's objectively reasonable expectations. If this rule does not resolve the ambiguity, it must be resolved against the insurer. In determining whether an ambiguity exists, the words of the policy must be interpreted according to the plain meaning that a layman would ordinarily attach to them. Policy language is ambiguous when it reasonably may be interpreted in two or more ways. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. Moreover, the language must be interpreted in the context of the policy as a whole, and in light of the circumstances of the case. It cannot be deemed to be ambiguous in the abstract.

*Bosetti v. U.S. Life Ins. Co. in City of New York,* 175 Cal.App.4th 1208, 1227, 96 Cal. Rptr.3d 744 (2009) (internal citations and quotations omitted).

■■■ "[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003) (internal quotations and alterations omitted). The "burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." *State Farm Mut. Auto. Ins. Co. v. Jacober,* 10 Cal.3d 193, 202, 110 Cal.Rptr. 1, 514 P.2d 953 (1973). Exclusions are construed narrowly, but ambiguous exceptions to exclusions are interpreted broadly in favor of the insured. *Aydin Corp. v. First State Ins. Co.,* 18 Cal.4th 1183, 1192, 77 Cal. Rptr.2d 537, 959 P.2d 1213 (1998). Endorsement provisions specifically negotiated for and drafted in a policy control over standardized provisions in the policy form. The terms in such a specially drafted endorsement control over inconsistent provisions in the policy. *Jane D. v. Ordinary Mut.,* 32 Cal.App.4th 643, 651, 38 Cal. Rptr.2d 131 (1995); *Aerojet–General Corp. v. Transport Indem. Co.,* 17 Cal.4th 38, 50, 70 Cal.Rptr.2d 118, 948 P.2d 909 (1997) ("if there is a conflict in the meaning between an endorsement and the body of the policy, the endorsement controls").

■■■ An insurer's "duty to defend is broader than its duty to indemnify." *Buss v. Superior Court,* 16 Cal.4th 35, 46, 65 Cal.Rptr.2d 366, 939 P.2d 766 (Cal.1997). An "insurer's duty to defend runs to claims that are merely *potentially* covered, in light of *facts* alleged or otherwise disclosed." *Id.* (emphasis added). The duty arises as soon as tender is made and it is discharged when the action is concluded or when it is determined that a claim cannot be in fact covered. *Id.* The duty to defend is not determined by the form of the causes of action in an underlying suit (i.e., whether the suit sounds in tort or contract); rather, the relevant inquiry is whether the *facts* alleged are of the type covered by the policy. *Vandenberg v. Superior Court,* 21 Cal.4th 815, 839, 88 Cal. Rptr.2d 366, 982 P.2d 229 (1999). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). The existence of a disputed fact that is determinative of coverage itself establishes a duty to defend. *Amato v. Mercury Casualty Co.,* 18 Cal.App.4th 1784, 1789–90, 23 Cal.Rptr.2d 73 (1993). However, "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller,* 11 Cal.4th at 19, 44 Cal.Rptr.2d 370, 900 P.2d 619.

**B. Analysis**

The causes of action in the Issimo complaint fall into two general categories.

Causes of action numbered (1), (2), (3), (4), (5), (10), and (11), which alleged accounting, breach of contract, breaches of warranties, declaratory relief, and a common count for money had and received, are contractual causes of action. The remaining causes of action, which include: (6) intentional misrepresentation; (7) concealment; (8) false promise; and (9) negligent misrepresentation, generally sound in tort.

## 1. The Breach of Contract Allegations

■ Plaintiff contends that Paragraph 10 of the Issimo complaint contains factual allegations giving rise to potential coverage, thus triggering a duty to defend. Paragraph 10 alleges a laundry-list of defects with Plaintiff's products and service, including the use of faulty ingredients, improper storage and shipping of the products, failure to disclose the ingredients on the packaging, late and inadequate deliveries, and overcharging. However, all of the allegations listed in Paragraph 10 of the Issimo complaint are preceded by the statement that Plaintiff "failed to meet their obligations and perform their promises *under the contracts,* including but not limited to the following ways." (Emphasis added). Plaintiff alternatively highlights Paragraph 38, which discusses a certain product manufactured by Plaintiff that was defective because it "suffered from faulty formulas." Yet, Paragraph 38 is also preceded by the allegation that Plaintiff "failed to perform its promises under the contract ... in the following regards." Thus, all of the allegations stemming from faulty formulas or shoddy ingredients are exclusively contractual in nature. In

short, Issimo alleged that the goods manufactured and delivered by Plaintiff were not delivered in accordance with contractual specifications.

Most CGL policies restrict coverage to damages resulting from "occurrences" and contains explicit exclusions that prevent coverage for breaches of contract stemming from Plaintiff's deficient products. *See St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 893, 145 Cal.Rptr. 836 (1978) ("poor workmanship on the delivered product is not 'property damage' within the terms of the general comprehensive liability policy"); *Seagate Technology, Inc. v. St. Paul Fire and Marine Ins. Co.,* 11 · F.Supp.2d 1150, 1155 (N.D.Cal. 1998). Breach of contract is not covered by a CGL policy unless the facts alleged in the underlying complaint could *also* give rise to coverage if brought under a different legal theory. *Compare Vandenberg,* 21 Cal.4th at 839, 88 Cal.Rptr.2d 366, 982 P.2d 229; *with Stein–Brief Group, Inc. v. Home Indem. Co.,* 65 Cal.App.4th 364, 371–72, 76 Cal.Rptr.2d 3 (1998). Such is not the case here.[2] It is undisputed that no third party actions from Issimo's customers ever arose, and there were never allegations that the products were physically unsafe. Absent the contract, Issimo could not have sued Plaintiff.

Plaintiff contends that a duty to defend and indemnify the *Issimo* suit nevertheless arose because of the Policy's Endorsement 11. Endorsement 11 layers professional liability policy on top of the form CGL policy, rendering it a hybrid with features of both types of policies.[3] Even

---

**2.** Plaintiff highlights Paragraph 9 of the Issimo complaint, which alleges that Issimo paid for some products in advance. Plaintiff contends that the products paid for in advance "belonged" to Issimo and thus were not be subject to the relevant Policy exclusions for *Plaintiff's* "product." This contention is foreclosed by the Policy's definition of "prod-

uct," and Plaintiff offers no cognizable legal theory to the contrary.

**3.** Defendant contends that Endorsement 11 does not confer professional liability coverage. However, Endorsement 11 is titled, in all capital letters, "PROFESSIONAL LIABILITY" and speaks exclusively to "professional

though the Policy also includes professional liability coverage, liability for breaches of contract are excluded from professional liability policies as well. *See August Entertainment, Inc. v. Philadelphia Indem. Ins. Co.*, 146 Cal.App.4th 565, 579, 52 Cal. Rptr.3d 908 (2007) ("Even in the absence of an express exclusion, courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay.") (quoting 23 Appleman on Insurance 2d (Holmes ed. 2003) § 146.6[I], pp. 120–121); *Bell Lavalin, Inc. v. Simcoe and Erie General Ins. Co.*, 61 F.3d 742, 746 (9th Cir.1995); *S.J. Amoroso Const. Co., Inc. v. Executive Risk Indemnity Inc.*, 2007 WL 3231741, *4–5 (N.D.Cal. Oct. 30, 2007), *overruled on other grounds.*

### 2. Allegations Sounding in Tort

■ The remaining causes of action in the Issimo complaint all sound in tort facially. These include causes of action numbered: (6) intentional misrepresentation; (7) concealment; (8) false promise; and (9) negligent misrepresentation. However, the underlying facts alleged in the complaint demonstrate that these causes of action are part and parcel of the contractual breaches, which are precluded under the Policy's broad, unambiguous terms. Where this is the case, coverage is lacking regardless of the form in which the causes of action are styled. The relevant inquiry is whether the *facts* alleged all arise from the alleged breach of conduct and could not otherwise constitute covered, tortious behavior. Such is the case here. Plaintiff cites the same factual allegations in the Issimo complaint described above (primarily Paragraphs 10 and 38) as supporting liability in tort, but those allegations all stem directly from the breach of contract and would not be independently actionable in tort based on the facts alleged. *See S.J. Amoroso Const. Co., Inc.*, 2007 WL 3231741 at *6; *Allstate Ins. Co. v. Hansten*, 765 F.Supp. 614, 616 (N.D.Cal. 1991); *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 831, 49 Cal.Rptr.3d 570 (2006); *Southgate Recreation & Park Dist. v. California Ass'n for Park & Recreation Ins.*, 106 Cal.App.4th 293, 300–02, 130 Cal. Rptr.2d 728 (2003). *Cf. Church Mutual Ins. Co. v. U.S. Liability Ins. Co.*, 347 F.Supp.2d 880, 885–89 (S.D.Cal.2004).

■ Even if the facts alleged related to claims sounding in tort, California law prohibits indemnification for intentionally harmful conduct such as fraud or misrepresentation. Cal. Ins.Code § 533; Cal. Civ.Code § 1668; *Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 871 F.Supp. 381, 386 (S.D.Cal.1994) ("Under California Civil Code [1668], Insurance Code 533 and the case law interpreting those provisions, insurance may not indemnify anyone from fraud or from negligent misrepresentation.") (citing cases).[4]

---

services." The creation of formulas for cosmetic products can constitute a professional service. *See generally Bank of California v. Opie*, 663 F.2d 977 (9th Cir.1981); *Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal. App.3d 800, 807, 256 Cal.Rptr. 357 (1989); *Amex Assur. Co. v. Allstate Ins. Co.*, 112 Cal. App.4th 1246, 1252, 5 Cal.Rptr.3d 744 (2003). This reasoning is supported by the fact that CGL "[l]iability policies often expressly *exclude* loss resulting from the rendering of or failure to render professional services."

Croskey, Heeseman, Popik & Imre, Cal. Prac. Guide: Insurance Litigation ¶ 7:330.2 (The Rutter Group 2009) (emphasis added); *see e.g. Food Pro Intern., Inc. v. Farmers Ins. Exchange*, 169 Cal.App.4th 976, 989, 89 Cal. Rptr.3d 1 (2008). In stark contrast, this policy expressly *includes* losses from professional services in the endorsement.

**4.** There are limited circumstances in which a duty to defend intentional acts can exist, but those circumstances are not present in this

## V. Conclusion

For the reasons stated, Defendant's Motion is GRANTED.

IT IS SO ORDERED.

case. *Cf. Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1086–87, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993); *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 870 (9th Cir.1979).